```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
EDITH ANGIOLETTI,

                              Plaintiff,

        -against-

ANTHONY FOXX, Secretary, U.S.
Department of Transportation,

                              Defendant.
----------------------------------------------------X
```

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JAN 23 2017 ★
LONG ISLAND OFFICE

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

14-CV-5848
(Wexler, J.)

APPEARANCES:

    Locksley O. Wade, Esq. and Felicia Nestor, Esq.
    Attorneys for Plaintiff
    11 Broadway, Suite 615
    New York, New York 10004

    United States Attorneys Office
    By: Diane C. Leonardo-Beckmann, Esq., James H. Knapp, Esq., & Susan L. Riley, Esq.
    Attorneys for Defendant
    610 Federal Plaza
    Central Islip, New York 11722

WEXLER, District Judge:

Plaintiff Edith Angioletti ("plaintiff" or "Angioletti") commenced this action against Anthony Foxx, as Secretary of the United States Department of Transportation, asserting claims of gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* A trial commenced on November 14, 2016. A jury was selected to hear and decide plaintiff's Title VII claims of gender discrimination and retaliation, but was informed that the age discrimination claim under the ADEA would be decided by the Court. At the close of evidence on November 16, 2016, defendant's motion to dismiss the Title VII claims pursuant to Rule 50 of the Federal Rules of

Civil Procedure was granted. This Court also granted defendant's motion to dismiss the ADEA claim pursuant to Rule 52 of the Federal Rules of Civil Procedure and indicated that a written decision would follow. This memorandum constitutes the Court's findings of facts and conclusions of law.

## I. FINDINGS OF FACT

### A. Angioletti's Employment at the Academy

Plaintiff worked at the Merchant Marine Academy (the "Academy") for approximately five years. From 2005 to 2007 she held temporary positions through an agency. In February 2008, plaintiff was hired directly to work at the Academy and held the position of chapel manager. In 2008, plaintiff was 59 years old.[1] At the time of her hiring, plaintiff was classified as a Non-Appropriated Fund Instrumentality ("NAFI") employee. NAFI employees were paid from funds that were not appropriated by Congress.

Sometime in 2008, an audit of the Academy's funding for its employees was conducted.[2] As a result of the audit, it was determined that non-appropriated funds could no longer be used to pay the salaries of NAFI employees. The Academy was directed to convert the NAFI positions to federal positions. At the time this decision was made, the jobs of approximately 67 NAFI employees were affected. Those employees were told that they had to compete for jobs through the federal hiring system if they wanted to be converted to federal positions. The process of converting the positions took several steps. It was necessary to create a job description for each position so that it could be classified within federal system and given a job series, title, and

---

[1] Angioletti testified that she was 60 years old in 2009.

[2] Although there is conflicting testimony as to whether this audit was conducted by the Government Accountability Office or the Office of Personnel Management, there is no dispute that an audit was conducted.

2

grade. Once approved, the job would be posted on the USAJOBS federal hiring website and opened to applicants.

The Academy was given a deadline of February 2009 to complete the NAFI conversions. At the approach of that deadline, a number of positions, including the chapel manager job, had yet to be converted or posted. An act of Congress gave the Academy special authority to hire the remaining NAFI employees as federal employees on a temporary, term basis. Twelve employees, including plaintiff, were offered these positions, and on February 11, 2009, plaintiff signed a document entitled "Conditions of Employment" for a term of employment not to exceed February 14, 2011, or two years. Angioletti conceded that she could have refused to sign the document, but noted that she would have been out of a job immediately had she done so. Indeed, as the non-appropriated funding was gone, the term positions were the only option available for continued employment. All 12 NAFIs, regardless of age or gender, were offered and accepted the same two year, term positions.

Plaintiff testified that she was told by some unspecified person or persons that the term positions were just a formality. Between the commencement of the term position in 2009 and December 2010, Angioletti claims that "they kept assuring us our jobs would be posted. It was just a formality, don't worry, you will not lose your job." Trial Transcript ("Tr.") 33:15-17. She claims that she repeatedly asked her supervisor, Captain Eric Wallischeck, to post her job and to find out what was going on. Tr. 36:14-16 ("every chance I get whenever I would bring my time sheet in to be signed by Captain Wallischeck I would ask what was going on."). Captain Wallischeck also testified that Angioletti would inquire about the conversion process as she was concerned for her job. Neither Angioletti nor Wallischeck testified, however, that Angioletti raised any concern or belief that her age as an issue in the conversion.

3

In December 2010, a meeting was held with the remaining NAFI employees working under the two-year term agreements. At that time, they were given information about their separation from employment to occur in February 2011. Angioletti was not fired; her employment ended when her two year term expired on February 14, 2011. After her employment ended, plaintiff filed a complaint with the Maritime Administration ("MARAD") in Washington, D.C. There is no evidence that Angioletti made a formal or informal complaint of discrimination prior to that time.[3]

**B. Filling of the Chapel Manager Position**

The Department of Transportation is the cabinet level agency that oversees a number of agencies, including the Federal Highway Administration ("FHA") and MARAD. The Academy operates within MARAD. Human Resources for the FHA acted as the executive agent for the Department of Transportation and was responsible for the posting of the positions to be filled at the Academy. Using the job listings provided by the Academy, FHA posted the positions, including the chapel manager position, on the USAJOBS website.

The chapel manager position was posted on the website on February 8, 2011, with a closing date of February 15, 2011. Angioletti applied for the job through the USAJOBS government website. She was not interviewed and claims that she was not rehired because "[t]hey weren't hiring old broads." Tr. 56:16.

The FHA reviewed the applicants for the chapel manager position. There were 192 applicants for the job. The position was subject to a veterans' preference such that qualified veterans would be hired before qualified non-veterans. Of the applicants, approximately 18 were veterans, and 10 of those were deemed qualified for the position. By operation of law, as there

---

[3] Another former NAFI employee, Shirley Anthony, testified that she complained of discrimination during the December 2010 meeting.

4

were two or more qualified veterans, only veterans would be referred for consideration and a non-veteran, such as plaintiff, could not be considered.

The FHA compiled a hiring list or "Certificate of Eligibles" for the chapel manager position that contained the names of the 10 qualified veterans and forwarded it to the Academy. Angioletti was not on the hiring list. Academy personnel had no role in the compilation of the list, nor could the list be changed by the Academy. Of the 10 qualified veterans, seven were men and three were women. The hiring list and supporting documentation were presented to Captain Wallischeck, who selected a disabled, female veteran from the list for the chapel manager job.

The Conditions of Employment signed by Angioletti for the two-year term employment provided that "[u]nder this appointment, you are not eligible to be promoted or reassigned to other positions, or the ability to be non-competitively converted to a career conditional appointment." Angioletti could only be converted to a federal position by competing for such a position and was ineligible for any merit promotion or reassignment.

## II. CONCLUSIONS OF LAW

A judgment for the defense under Rule 52(c) is appropriate when a plaintiff fails to make out a prima facie case or where the court concludes that the preponderance of the evidence goes against the plaintiff. *See* FED. R. CIV. P. 52(c). Applying this rule, "the court does not consider the evidence in the light most favorable to the non-moving party, but rather weighs the evidence, resolves any conflicts and determines for itself where the preponderance of evidence lies." *Pal v. New York Univ.*, No. 06-CV-5892, 2013 WL 4001525, at *7 (S.D.N.Y. Aug. 6, 2013) (quotation and citation omitted).

The ADEA establishes that it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges or employment, because of such individual's age." 29 U.S.C. §

5

623(a)(1). To establish a prima facie case of age discrimination, Angioletti had to prove by a preponderance of the evidence that (1) she was within the protected age group; (2) she was qualified for the position; (3) she experienced an adverse employment action; and (4) such action occurred under circumstances giving rise to an inference of discrimination. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010) (citation omitted). Plaintiff's burden of persuasion on her ADEA claim is more onerous than that on her Title VII claim as she had to prove "by a preponderance of the evidence, that age was the 'but-for' cause behind the employer's adverse decision, and not merely one of the motivating factors." *Hrisinko v. N.Y.C. Dep't of Educ.*, 369 F. App'x 232, 234 (2d Cir. 2010) (quoting *Gross v. FBL Fin. Servs, Inc.*, 557 U.S. 167, 176, 129 S. Ct. 2343 (2009)).

Plaintiff has failed to raise any inference of age discrimination, let alone but-for causation. To prevail, she "must come forward with some evidence, beyond merely stating that [she] is a member of a protected class that suffered an adverse employment decision." *Rosario v. Hilton Worldwide, Inc.*, No. 09-CV-5336, 2011 WL 336394, at *3 (E.D.N.Y. Jan. 24, 2011), *aff'd* 476 F. App'x 900 (2d Cir. 2012). Plaintiff presented no evidence whatsoever that her failure to be hired for the chapel manager position occurred under circumstances giving rise to an inference of age discrimination. The Court need not make any credibility determinations because there is no conflicting testimony regarding any alleged discrimination. Both Angioletti and Wallischeck testified that plaintiff raised the issue of the status of her job frequently, but there is nothing in the content of those conversations, express or implied, that constitutes any discriminatory intent on Wallischeck's behalf.

While negative comments about a party's age may constitute circumstantial evidence of discrimination, the only comments regarding plaintiff's age raised at trial were ones she made

herself when at the December 2010 meeting, she and Anthony "stood up and said we were two old broads." Tr. 41:24-25. Even crediting Angioletti's unsubstantiated belief that she was strung along with assurances from some unidentified party that she was certain to get her job, there is not a shred of evidence that those assurances were based on any discriminatory intent. Finally, Angioletti was 59 years old when she was first hired as chapel manager and thus any "inference of discrimination is further weakened by the fact that plaintiff . . . was well within the protected class when first hired." *Mathews v. Huntington*, 499 F. Supp. 2d 258, 268 (E.D.N.Y. 2007) (internal quotation and citations omitted).

Even if plaintiff had successfully made out a prima facie case of age discrimination, defendant has provided a legitimate, nondiscriminatory reason for its actions. Defendant put forth credible testimony from Human Resources personnel Ray Venkersammy, Kim Norris, and Kirsten Wolverton regarding federal hiring regulations in general, and as applied in this case, that was essentially unchallenged. Under the federal hiring laws, qualified veterans are preferred for hiring over qualified non-veterans. Here, there were 10 qualified veterans, and thus by operation of federal law, plaintiff could not be considered for the position. In addition, plaintiff did not contest testimony that Wallischeck's hiring authority was limited to selecting a candidate from the list provided to him and that he would have been unable to go beyond that list to select any other individual, including plaintiff.

### III. CONCLUSION

For all the foregoing reasons, plaintiff Angioletti has failed to prove her claim of age discrimination against defendant. In light of this Order and the Court's prior dismissal of the

gender discrimination claim at the conclusion of the trial on November 16, 2016, the Clerk of the Court is directed to enter judgment for defendant and to close the file.

SO ORDERED.

/s/ Leonard D. Wexler
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
January 23, 2017